| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| DAVID I. BROWNSTEIN (SBN 195393)<br>21700 Oxnard Street, Suite 1160<br>Woodland Hills, CA 91367<br>Telephone: (818) 905-0000<br>Telecopier: (818) 593-3988<br><br>☐ *Individual appearing without counsel*<br>☒ *Attorney for:* Landlord, AZ/CFS West, Inc. | |
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
| In re: DRAYAGE EXPRESS, CORP.,<br>A California Corporation<br><br><br><br>Debtor(s). | CHAPTER: 11<br>CASE NO.: 2:09-bk-32783-VZ<br>DATE: 10/27/09<br>TIME: 9:30 a.m.<br>CTRM: 1360<br>FLOOR: 13th Floor |

# NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (with supporting declarations)
### (MOVANT: AZ/CFS West, Inc. )
### (Unlawful Detainer)

1. NOTICE IS HEREBY GIVEN to the Debtor(s), Debtor's(s') attorney, and other interested parties ("Responding Party") that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay or for an order confirming that the automatic stay does not apply as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

   ☐ NOTICE IS ALSO GIVEN to the Trustee as an additional Responding Party, because the Motion relates to a nonresidential property.

2. Hearing Location:   ☒ 255 East Temple Street, Los Angeles    ☐ 411 West Fourth Street, Santa Ana
    ☐ 21041 Burbank Boulevard, Woodland Hills    ☐ 1415 State Street, Santa Barbara
    ☐ 3420 Twelfth Street, Riverside

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of the Motion.

   b. ☐ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

      ☐ at the hearing    ☐ at least _____ court days before the hearing.

      (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).
      (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.
      (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009

F 4001-1M.UD

Page 1

| In re (SHORT TITLE) DRAYAGE EXPRESS, CORP., A California Corporation | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NO.: 2:09-bk-32783-VZ |

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

5. If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: 10/6/09

BROWNSTEIN & BROWNSTEIN, LLP
*Print Law Firm Name (if applicable)*

David Brownstein
*Print Name of Individual Movant or Attorney for Movant*

*Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009

F 4001-1M.UD

Page 2

| In re | (SHORT TITLE) | | CHAPTER: 11 |
|---|---|---|---|
| DRAYAGE EXPRESS, CORP., A California Corporation | | Debtor(s). | CASE NO.: 2:09-bk-32783-VZ |

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
## (Unlawful Detainer)
**(MOVANT:** AZ/CFS West, Inc. **)**

1. **The Property at Issue:** Movant moves for relief from the automatic stay to obtain possession of the residential or nonresidential premises at the following address (the "Property"):

   *Street Address:* 17707 S. Santa Fe Avenue
   *Apartment/Suite No.:*
   *City, State, Zip Code:* Rancho Dominguez, California 90221

   **The Property is:**   ☐ Residential   ☒ Nonresidential

2. **Case History:**
   a. ☒ A voluntary ☐ An involuntary petition under Chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13
      was filed on *(specify date)*: 8/25/09
   b. ☐ An Order of Conversion to Chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13
      was entered on *(specify date)*:
   c. ☐ Plan was confirmed on *(specify date)*:
   d. ☐ Other bankruptcy cases of the Debtor were pending within the year ending on the petition date. See attached Declaration.
   e. ☐ Other bankruptcy cases affecting this Property have been pending within the two years ending on the petition date. See attached Declaration.

3. **Grounds for Relief from Stay:** *(Check all that apply)*
   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of petition date, Debtor(s) had no right to continued occupancy of the premises, as follows:
      (1) ☐ An unlawful detainer judgment in favor of Movant was entered prepetition.
         A. ☐ The debtor has not filed with the petition and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).
         B. ☐ The debtor or adult dependent of debtor has not deposited with the Clerk any rent that would become due during the 30-day period after the filing of the petition.
         C. ☐ The debtor or adult dependent of debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.
         D. ☐ The Movant has filed and served an objection to the certification referenced in (a)(1)(A) and/or (a)(1)(C) above. A copy of the objection is attached hereto as Exhibit _____. A hearing on this objection is set for: _____.
      (2) ☒ An unlawful detainer proceeding was commenced prepetition.
      (3) ☐ Movant acquired title to the premises by foreclosure sale prepetition and recorded the deed within the period provided by state law for perfection.
      (4) ☐ Movant acquired title to the premises by foreclosure sale postpetition and recorded the deed within the period provided by state law for perfection.
      (5) ☐ The lease or other right of occupancy expired by its terms prepetition.
      (6) ☐ The lease has been rejected or deemed rejected by operation of law.
      (7) ☒ Lease payments have not been made since the filing of the petition.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009

F 4001-1M.UD

Page 3

Motion for Relief from Stay (Unlawful Detainer) - *Page 4 of* ____    **F 4001-1M.UD**

| In re (SHORT TITLE)<br>DRAYAGE EXPRESS, CORP., A California Corporation | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NO.: 2:09-bk-32783-VZ |

    (8) ☐ An eviction action has been filed to obtain possession of the subject residential property on grounds of endangerment of the property **or** because of illegal use of controlled substances on the property and Movant has filed and served upon Debtor a certification that ☐ such an action was filed or ☐ that within the 30 days preceding the certification Debtor has endangered the subject property or illegally allowed the use of controlled substances on the property. A copy of Movant's certification is attached as Exhibit ____. Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of Debtor's objection, if any, is attached as Exhibit ____. A hearing on this objection is set for: _____.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

    (1) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

    (2) ☐ Other bankruptcy cases have been filed asserting an interest in the same property.

    (3) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents. No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

4. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

☒ Movant submits the attached Unlawful Detainer Declaration to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

☐ Other Declaration(s) are also attached in support of this Motion.

**WHEREFORE, Movant prays that this Court issue an Order granting the following** *(specify forms of relief requested)*:

1. ☒ Termination of the stay to allow Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as set forth in the attached Declaration(s).

3. ☒ An order confirming that the automatic stay does not apply.

4. ☒ Alternatively, if immediate relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable:

    a. Establishment of a deadline for assumption or rejection of the lease.

    b. Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009      F 4001-1M.UD

Page 4

Motion for Relief from Stay (Unlawful Detainer) - *Page 5 of* ____   F 4001-1M.UD

| In re (SHORT TITLE) DRAYAGE EXPRESS, CORP., A California Corporation | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NO.: 2:09-bk-32783-VZ |

5. Additional provisions requested:

   a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

   b. ☐ Termination or modification of the Co-debtor Stay of 11 U.S.C. § 1201 or § 1301 as to the above-named co-debtor, on the same terms and conditions.

   c. ☒ That the 10-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

   d. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

   e. ☒ For other relief requested, see attached continuation page.

Dated: 10/6/09                    Respectfully submitted,

                                  AZ/CFS West, Inc.
                                  *Movant Name*

                                  Brownstein & Brownstein LLP
                                  *Firm Name of Attorney for Movant (if applicable)*

                                  By: [signature]
                                  *Signature*

                                  Name: DAVID I. BROWNSTEIN
                                  *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009                                                                F 4001-1M.UD

Page 5

Motion for Relief from Stay (Unlawful Detainer) - *Page 6 of* ____   **F 4001-1M.UD**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| DRAYAGE EXPRESS, CORP., A California Corporation | Debtor(s). | CASE NO.: 2:09-bk-32783-VZ |

# UNLAWFUL DETAINER DECLARATION
**(MOVANT:** AZ/CFS West, Inc. **)**

I, Frank Radogna _____, declare as follows:
*(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the residential or nonresidental real property that is the subject of this Motion ("Property") because:

    ☐ I am the Movant and owner of the Property.

    ☐ I manage the Property as the authorized agent for the Movant.

    ☒ I am employed by Movant as *(state title and capacity)*: Chief Financial Officer

    ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. The address of the Property that is the subject of this Motion is:

    *Street Address:* 17707 S. Santa Fe Avenue
    *Apartment/Suite No.:*
    *City, State, Zip Code:* Rancho Dominguez, California 90221

4. Movant is the legal owner of the Property, or the owner's legally authorized agent. A true and correct copy of the Trustee's Deed upon Sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit "A" ____. A true and correct copy of any applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5. The Property is: ☐ residential property   ☒ nonresidential property
    a. Debtor(s) occupies the Property
        ☐ on a month-to-month tenancy             ☐ pursuant to a lease that is in default
        ☐ after a foreclosure sale on: _____   ☒ other *(specify)*:  as a holdover tenant
    b. ☒ Debtor(s) has/have failed to pay the monthly rent of $ 77,105.42 _____ since the following date *(specify date)*: 5/1/09
    c. ☐ In addition, Debtor(s) has/have failed to pay other obligations under the lease, including the following (*See attached continuation page for itemization*):
        (1) ☐ Common area maintenance charges
        (2) ☐ Property taxes
        (3) ☐ For additional obligations, see attached continuation page.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009

**F 4001-1M.UD**

Page 6

| In re | | CHAPTER: 11 |
|---|---|---|
| DRAYAGE EXPRESS, CORP., A California Corporation | | |
| | Debtor(s). | CASE NO.: 2:09-bk-32783-VZ |

6. Debtor's(s') bankruptcy petition in this case was filed on *(specify date)*: 8/25/09

7. Procedural status *(indicate all that apply, and provide dates for completed steps)*:

   a. ☒ Movant caused a Notice to Quit to be served upon the Debtor(s) on *(specify date)*: 5/11/09
      A true and correct copy of which is attached hereto as Exhibit "B"

   b. ☒ Before the filing of the petition, Movant had commenced an unlawful detainer proceeding in state court and completed the following:

      (1) ☒ Movant filed a Complaint for Unlawful Detainer against the Debtor(s) on *(specify date)*: 6/10/09, a true and correct copy of which is attached as Exhibit "C".

      (2) ☐ Trial was held on *(specify date)*:

      (3) ☐ An Unlawful Detainer Judgment against the Debtor(s) was entered on the Complaint for Unlawful Detainer on *(specify date)*: _____, a true and correct copy of which is attached as Exhibit _____.

      (4) ☐ A Writ of Possession for the Property was issued by the state court on *(specify date)*: _____, a true and correct copy of which is attached as Exhibit _____.

      (5) ☐ The Debtor has not filed with the petition and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

      (6) ☐ The Debtor or adult dependent of Debtor has not deposited with the Clerk any rent that would become due during the 30-day period after the filing of the petition.

      (7) ☐ The debtor or adult dependent of debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

      (8) ☐ Movant has filed and served an objection to Debtor's certification referenced in paragraph (5) and/or (7) above, a copy of which is attached hereto as Exhibit _____. A hearing on this objection is set for: _____.

      (9) ☐ An eviction action has been filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that ☐ such action was filed or ☐ that Debtor has endangered the subject property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property. A copy of Movant's certification is attached hereto as Exhibit ____. Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of Debtor's objection, if filed, is attached hereto as Exhibit _____. A hearing on this objection is set for: _____.

   c. ☐ The lease was rejected on _____ *(date)*:

      (1) ☐ by operation of law.

      (2) ☐ by Order of the Court.

   d. ☒ The regular lease payments have not been made since the filing of the petition.

8. ☒ Debtor(s) has/have no equity in the Property because Debtor(s) does/do not have a lease interest that could be assumed or assigned under 11 U.S.C. § 365.

9. ☒ The Property is not necessary to an effective reorganization because *(specify)*:

   a. ☐ The Property is residential and is not producing income for the Debtor(s).

   b. ☐ The Property is commercial, but no reorganization is reasonably in prospect.

   c. ☒ Other *(specify)*:
      Debtor has filed a motion to reject the lease.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009

F 4001-1M.UD

Page 7

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| DRAYAGE EXPRESS, CORP., A California Corporation | Debtor(s). | CASE NO.: 2:09-bk-32783-VZ |

10. ☒ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

    a. ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

    b. ☐ Other bankruptcy cases have been filed asserting an interest in the same property.

    c. ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents. No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

    d. ☒ Other (specify):
The Bankruptcy was filed the day after notice of an ex-parte motion to proceed in state court on the UD action.

11. ☐ Other bankruptcy cases that have prevented Movant from recovering possession of this Property include the following:

    a. Case Name:
       Case Number:           Chapter:
       Date Filed:               Date Dismissed:
       Relief from stay re this Property  ☐ was  ☐ was not granted.

    b. Case Name:
       Case Number:           Chapter:
       Date Filed:               Date Dismissed:
       Relief from stay re this Property  ☐ was  ☐ was not granted.

    c. ☐ See attached continuation page for more information about other cases.

12. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the actions set forth in paragraph 7 that were taken after the filing of the bankruptcy petition in this case.

    a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 11 above.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on <u>10-06</u>, <u>09</u>, at <u>Elk Grove Village, Illinois</u> (city, state).

Frank Radogna
Print Declarant's Name                            Signature of Declarant

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009            F 4001-1M.UD

Page 8

# EXHIBIT A



## STANDARD SUBLEASE
## MULTI-TENANT
## AIR COMMERCIAL REAL ESTATE ASSOCIATION

1. **Basic Provisions ("Basic Provisions").**

   1.1 **Parties:** This Sublease ("Sublease"), dated for reference purposes only <u>October 23, 2006</u> is made by and between <u>AZ/CFS West, Inc., a California Corporation</u>

   <u>Drayage Express, Corp., a California Corporation</u> ("Sublessor") and

   _____ ("Sublessee"), (collectively the "Parties", or individually a "Party").

   1.2(a). **Premises:** That certain portion of the Project (as defined below), known as <u>17707 S. Santa Fe Ave., Rancho Dominguez, CA 90221</u> consisting of approximately <u>92,000</u> square feet ("Premises"). The Premises are located at: <u>17707 S. Santa Fe Ave., Rancho Dominguez, CA 90221</u> ~~(the entire premises is approximately 132,000 SF)~~ in the City of <u>Unincorporated Los Angeles County</u>, County of <u>Los Angeles</u>, State of <u>California</u>, with zip code <u>90221</u>. In addition to Sublessee's rights to use and occupy the Premises as hereinafter specified, Sublessee shall have nonexclusive rights to the Common Areas (as defined below) as hereinafter specified, but shall not have any rights to the roof, the exterior walls, or the utility raceways of the building containing the Premises ("Building") or to any other buildings in the Project. The Premises, the Building, the Common Areas, the land upon which they are located, along with all other buildings and improvements thereon, are herein collectively referred to as the "Project."

   1.2(b) **Parking:** <u>See Exhibit "B"</u> unreserved and <u>N/A</u> reserved vehicle parking spaces.

   1.3 **Term:** <u>four (4)</u> years and <u>fourteen (14)</u> days ~~months~~ commencing <u>November 1, 2006</u> ("Commencement Date") and ending <u>November 14, 2010</u> ("Expiration Date").

   1.4 **Early Possession:** <u>upon completion of Tenant Improvements</u> ("Early Possession Date").

   1.5 **Base Rent:** <u>$46,000.00</u> per month ("Base Rent"), payable on the <u>first (1st)</u> day of each month commencing <u>December 1, 2006</u>.

   [ ] If this box is checked, there are provisions in this Sublease for the Base Rent to be adjusted.

   1.6 **Sublessee's Share of Operating Expenses:** <u>seventy</u> percent (<u>70</u>%) ("Sublessee's Share").

   1.7 **Base Rent and Other Monies Paid Upon Execution:**
   (a) Base Rent: <u>$46,000.00</u> for the period <u>December 1, 2006 – December 31, 2007</u>
   (b) Security Deposit: <u>$50,000.00</u> ("Security Deposit").
   (c) Other: <u>$N/A</u> for <u>N/A</u>
   (d) Total Due Upon Execution of this Lease: <u>$96,000.00</u>

   1.8 **Agreed Use:** <u>warehouse and distribution of general merchandise and related office use.</u>

   1.9 **Real Estate Brokers:**
   (a) **Representation:** The following real estate brokers (the "Brokers") and brokerage relationships exist in this transaction (check applicable boxes):
   <u>Lee & Associates- LA South Bay, Inc. (Don Smith)</u> represents Sublessor exclusively ("Sublessor's Broker");
   <u>NAI Capital (Bob Morris)</u> represents Sublessee exclusively ("Sublessee's Broker"); or
   _____ represents both Sublessor and Sublessee ("Dual Agency").
   (b) **Payment to Brokers:** Upon execution and delivery of this Sublease by both Parties, Sublessor shall pay to Brokers the brokerage fee agreed to in a separate written agreement (or if there is no such agreement, the sum of <u>r schedule</u> or <u>N/A</u> % of the total Base Rent for the brokerage services rendered by the Brokers).

   1.10 **Guarantor.** The obligations of the Sublessee under this Sublease shall be guaranteed by <u>N/A</u>

   _____ ("Guarantor").

   1.11 **Attachments:** Attached hereto are the following, all of which constitute a part of this Sublease:
   an Addendum consisting of Paragraphs <u>13</u> through <u>20</u>;
   a plot plan depicting the Premises and/or Project;
   a current set of the Rules and Regulations;
   a Work Letter;
   a copy of the Master Lease;
   other (specify): _____

PAGE 1 OF 6

INITIALS

1 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM SBMT-0-4/01E

Premises.

2.1 **Letting.** Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the emises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Sublease. Unless otherwise ovided herein, any statement of size set forth in this Sublease, or that may have been used in calculating Rent, is an approximation ich the Parties agree is reasonable and any payments based thereon are not subject to revision whether or not the actual size is re or less. Note: Sublessee is advised to verify the actual size prior to executing this Sublease.

2.2 **Condition.** Sublessor shall deliver the Premises to Sublessee broom clean and free of debris on the mmencement Date or the Early Possession Date, whichever first occurs ("Start Date"), and warrants that the existing electrical, mbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ("HVAC"), and any items which the Lessor is igated to construct pursuant to the Work Letter attached hereto, if any, other than those constructed by Lessee, shall be in good erating condition on said date. If a noncompliance with such warranty exists as of the Start Date, or if one of such systems or ments should malfunction or fail within the appropriate warranty period, Sublessor shall, as Sublessor's sole obligation with respect uch matter, except as otherwise provided in this Sublease, promptly after receipt of written notice from Sublessee setting forth with ecificity the nature and extent of such noncompliance, malfunction or failure, rectify same at Sublessor's expense. The warranty iods shall be as follows: (i) 6 months as to the HVAC systems, and (ii) 30 days as to the remaining systems and other elements. If lessee does not give Sublessor the required notice within the appropriate warranty period, correction of any such noncompliance, lfunction or failure shall be the obligation of Sublessee at Sublessee's sole cost and expense.

2.3 **Compliance.** Sublessor warrants that any improvements, alterations or utility installations made or installed by or on alf of Sublessor to or on the Premises comply with all applicable covenants or restrictions of record and applicable building codes, ulations and ordinances ("Applicable Requirements") in effect on the date that they were made or installed. Sublessor makes no rranty as to the use to which Sublessee will put the Premises or to modifications which may be required by the Americans with abilities Act or any similar laws as a result of Sublessee's use. NOTE: Sublessee is responsible for determining whether or not zoning and other Applicable Requirements are appropriate for Sublessee's intended use, and acknowledges that past a of the Premises may no longer be allowed. If the Premises do not comply with said warranty, Sublessor shall, except as rwise provided, promptly after receipt of written notice from Sublessee setting forth with specificity the nature and extent of such compliance, rectify the same.

2.4 **Acknowledgements.** Sublessee acknowledges that: (a) it has been advised by Sublessor and/or Brokers to satisfy f with respect to the condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, ronmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for essee's intended use, (b) Sublessee has made such investigation as it deems necessary with reference to such matters and mies all responsibility therefor as the same relate to its occupancy of the Premises, and (c) neither Sublessor, Sublessor's agents, Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this ease. In addition, Sublessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning essee's ability to honor the Sublease or suitability to occupy the Premises, and (ii) it is Sublessor's sole responsibility to itigate the financial capability and/or suitability of all proposed tenants.

2.5 **Americans with Disabilities Act.** In the event that as a result of Sublessee's use, or intended use, of the Premises mericans with Disabilities Act or any similar law requires modifications or the construction or installation of improvements in or to remises, Building, Project and/or Common Areas, the Parties agree that such modifications, construction or improvements shall ide at: ☐ Sublessor's expense ☐ Sublessee's expense.

2.6 **Vehicle Parking.** Sublessee shall be entitled to use the number of Unreserved Parking Spaces and Reserved ng Spaces specified in Paragraph 1.2(b) on those portions of the Common Areas designated from time to time for parking. ssee shall not use more parking spaces than said number. Said parking spaces shall be used for parking by vehicles no larger ull-size passenger automobiles or pickup trucks, herein called "Permitted Size Vehicles." Sublessor may regulate the loading loading of vehicles by adopting Rules and Regulations as provided in Paragraph 2.9. No vehicles other than Permitted Size es may be parked in the Common Area without the prior written permission of Sublessor.

(a) Sublessee shall not permit or allow any vehicles that belong to or are controlled by Sublessee or see's employees, suppliers, shippers, customers, contractors or invitees to be loaded, unloaded, or parked in areas other than designated by Sublessor for such activities.

(b) Sublessee shall not service or store any vehicles on site in the Common Areas.

(c) If Sublessee permits or allows any of the prohibited activities described in this Paragraph 2.6, then sor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove or tow away icle involved and charge the cost to Sublessee, which cost shall be immediately payable upon demand by Sublessor.

2.7 **Common Areas - Definition.** The term "Common Areas" is defined as all areas and facilities outside the Premises hin the exterior boundary line of the Project and interior utility raceways and installations within the Premises that are provided signated by the Sublessor from time to time for the general nonexclusive use of Sublessor, Sublessee and other tenants of the and their respective employees, suppliers, shippers, customers, contractors and invitees, including parking areas, loading and ng areas, trash areas, roadways, walkways, driveways and landscaped areas.

2.8 **Common Areas - Sublessee's Rights.** Sublessor grants to Sublessee, for the benefit of Sublessee and its es, suppliers, shippers, contractors, customers and invitees, during the term of this Sublease, the nonexclusive right to use, in n with others entitled to such use, the Common Areas as they exist from time to time, subject to any rights, powers, and s reserved by Sublessor under the terms hereof or under the terms of any rules and regulations or restrictions governing the e Project. Sublessee shall have the right to store property in common areas subject to all governmental codes and Master Lessor's regulations contained in the Master Lease as modified from time to time. Under no circumstances shall the right herein granted to Common Areas be deemed to include the right to store any property, temporarily or permanently, in the Common Areas. Any rage shall be permitted only by the prior written consent of Sublessor or Sublessor's designated agent, which consent may be at any time. In the event that any unauthorized storage shall occur then Sublessor shall have the right, without notice, in to such other rights and remedies that it may have, to remove the property and charge the cost to Sublessee, which cost shall diately payable upon demand by Sublessor.

2.9 **Common Areas - Rules and Regulations.** Sublessor or such other person(s) as Sublessor may appoint shall have sive control and management of the Common Areas and shall have the right, from time to time, to establish, modify, amend rce reasonable rules and regulations ("Rules and Regulations") for the management, safety, care, and cleanliness of the the parking and unloading of vehicles and the preservation of good order, as well as for the convenience of other occupants s of the Building and the Project and their invitees. Sublessee agrees to abide by and conform to all such Rules and ns, and to cause its employees, suppliers, shippers, customers, contractors and invitees to so abide and conform. Sublessor e responsible to Sublessee for the noncompliance with said Rules and Regulations by other tenants of the Project.

2.10 **Common Areas - Changes.** Sublessor shall have the right, in Sublessor's sole discretion, from time to time:
(a) To make changes to the Common Areas, including, without limitation, changes in the location, size, shape er of driveways, entrances, parking spaces, parking areas, loading and unloading areas, ingress, egress, direction of traffic, d areas, walkways and utility raceways;
(b) To close temporarily any of the Common Areas for maintenance purposes so long as reasonable access to es remains available;
(c) To add additional buildings and improvements to the Common Areas;

PAGE 2 OF 6

COMMERCIAL REAL ESTATE ASSOCIATION

INITIALS

FORM SBMT-0-4/01E

(d) To use the Common Areas while engaged in making additional improvements, repairs or alterations to the Project, or any portion thereof; and

(e) To do and perform such other acts and make such other changes in, to or with respect to the Common Areas and Project as Sublessor may, in the exercise of sound business judgment, deem to be appropriate.

Possession.

3.1 **Early Possession.** If Sublessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such early possession. All other terms of this Sublease (including but not limited to the obligations to pay Sublessee's Share of Common Area Operating Expenses, Real Property Taxes and insurance premiums and to maintain the Premises) shall, however, be in effect during such period. Any such early possession shall not affect the Expiration Date.

3.2 **Delay in Commencement.** Sublessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises by the Commencement Date. If, despite said efforts, Sublessor is unable to deliver possession as agreed, the rights and obligations of Sublessor and Sublessee shall be as set forth in Paragraph 3.3 of the Master Lease (as modified by Paragraph 7.3 of this Sublease).

3.3 **Sublessee Compliance.** Sublessor shall not be required to tender possession of the Premises to Sublessee until Sublessee complies with its obligation to provide evidence of insurance. Pending delivery of such evidence, Sublessee shall be required to perform all of its obligations under this Sublease from and after the Start Date, including the payment of Rent, notwithstanding Sublessor's election to withhold possession pending receipt of such evidence of insurance. Further, if Sublessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Sublessor may elect to withhold possession until such conditions are satisfied.

Rent and Other Charges.

4.1 **Rent Defined.** All monetary obligations of Sublessee to Sublessor under the terms of this Sublease (except for the Security Deposit) are deemed to be rent ("Rent"). Rent shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

4.2 **Common Area Operating Expenses.** Sublessee shall pay to during the term hereof in addition to the Base Rent Sublessee's Share of all Common Area Operating Expenses, as hereinafter defined, during each calendar year of the term of this Sublease, in accordance with the following provisions:

(a) "Common Area Operating Expenses" are defined, for purposes of this Sublease, as all costs incurred by Sublessor relating to the operation of the Project, including, but not limited to, the following:

(i) The operation, repair and maintenance, in neat, clean, good order and condition, but not the replacement of the following:

(aa) The Common Areas and Common Area improvements, including parking areas, loading and unloading areas, trash areas, roadways, parkways, walkways, driveways, landscaped areas, bumpers, irrigation systems, Common Area lighting facilities, fences and gates, elevators, roofs, and roof drainage systems.

(bb) Exterior signs and any tenant directories.

(cc) Any fire sprinkler systems.

(ii) The cost of water, gas, electricity and telephone to service the Common Areas and any utilities not separately metered.

(iii) Trash disposal, pest control services, property management, security services, and the costs of any environmental inspections.

(iv) Reserves set aside for maintenance and repair of Common Areas.

(v) Real Property Taxes.

(vi) Insurance premiums.

(vii) Any deductible portion of an insured loss concerning the Building or the Common Areas.

(b) The inclusion of the improvements, facilities and services set forth in Subparagraph 4.2(a) shall not be deemed to impose an obligation upon Sublessor to either have said improvements or facilities or to provide those services unless Sublessor already provides the services, or Sublessor has agreed elsewhere in this Sublease to provide the same or some of them.

(c) Sublessee's Share of Common Area Operating Expenses shall be payable by Sublessee within 10 days after a reasonably detailed statement of actual expenses is presented to Sublessee. At Sublessor's option, however, an amount may be estimated by Sublessor from time to time of Sublessee's Share of annual Common Area Operating Expenses and the same shall be payable monthly or quarterly, as Sublessor shall designate, during each 12 month period of the Sublease term, on the same day as the Base Rent is due hereunder. Sublessor shall deliver to Sublessee within 60 days after the expiration of each calendar year a reasonably detailed statement showing Sublessee's Share of the actual Common Area Operating Expenses incurred during the preceding year. If Sublessee's payments under this Paragraph 4.2(c) during the preceding year exceed Sublessee's Share as indicated on such statement, Sublessor shall credit the amount of such overpayment against Sublessee's Share of Common Area Operating Expenses next becoming due. If Sublessee's payments under this Paragraph 4.2(c) during the preceding year were less than Sublessee's Share as indicated on such statement, Sublessee shall pay to Sublessor the amount of the deficiency within 10 days after delivery by Sublessor to Sublessee of the statement.

4.3 **Utilities.** Sublessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon. Notwithstanding the provisions of Paragraph 4.2, if at any time in Sublessor's sole judgment, Sublessor determines that Sublessee is using a disproportionate amount of water, electricity or other commonly metered utilities, or that Sublessee is generating such a large volume of trash as to require an increase in the size of the dumpster and/or an increase in the number of times per month that the dumpster is emptied, then Sublessor may increase Sublessee's Base Rent by an amount equal to such increased costs.

Security Deposit. The rights and obligations of Sublessor and Sublessee as to said Security Deposit shall be as set forth in Paragraph 5 of the Master Lease (as modified by Paragraph 7.3 of this Sublease).

Agreed Use. The Premises shall be used and occupied only for <u>warehouse and distribution of general merchandise and related office use</u> and for no other purpose.

Master Lease.

7.1 Sublessor is the lessee of the Premises by virtue of a lease, hereinafter the "Master Lease", wherein <u>Lpitas Fleming Associates, a California General Partnership, Stanley and Joyce Black, and Tymar Partners California General Partnership</u> is the lessor, hereinafter the "Master Lessor".

7.2 This Sublease is and shall be at all times subject and subordinate to the Master Lease.

7.3 The terms, conditions and respective obligations of Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease document shall control over the Master Lease. Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Lessor" is used it shall be deemed to mean the Sublessor herein and

PAGE 3 OF 6

ALS

INITIALS

*ever in the Master Lease the word "Lessee" is used it shall be deemed to mean the Sublessee herein.

7.4 During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the *mination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of *blessor and Master Lessor, each and every obligation of Sublessor under the Master Lease except for the following paragraphs *ich are excluded therefrom: <u>1.3, 1.4, 1.5, 1.6, 1.7, 1.10, 1.11, 2.3, 15, 50, 51, (54) Rent ijustment, (55) Option to Extend and First Amendment to Lease Paragraphs 2, 4, 5</u>

7.5 The obligations that Sublessee has assumed under paragraph 7.4 hereof are hereinafter referred to as the "ublessee's Assumed Obligations". The obligations that sublessee has not assumed under paragraph 7.4 hereof are hereinafter ferred to as the "Sublessor's Remaining Obligations".

7.6 Sublessee shall hold Sublessor free and harmless from all liability, judgments, costs, damages, claims or demands, :luding reasonable attorneys fees, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.

7.7 Sublessor agrees to maintain the Master Lease during the entire term of this Sublease, subject, however, to any *rlier termination of the Master Lease without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining *ligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of *blessor's failure to comply with or perform Sublessor's Remaining Obligations.

7.8 Sublessor represents to Sublessee that the Master Lease is in full force and effect and that no default exists on the *rt of any Party to the Master Lease.

Assignment of Sublease and Default.

8.1 Sublessor hereby assigns and transfers to Master Lessor the Sublessor's interest in this Sublease, subject however the provisions of Paragraph 8.2 hereof.

8.2 Master Lessor, by executing this document, agrees that until a Default shall occur in the performance of Sublessor's *ligations under the Master Lease, that Sublessor may receive, collect and enjoy the Rent accruing under this Sublease. However, if *blessor shall Default in the performance of its obligations to Master Lessor then Master Lessor may, at its option, receive and *lect, directly from Sublessee, all Rent owing and to be owed under this Sublease. Master Lessor shall not, by reason of this *signment of the Sublease nor by reason of the collection of the Rent from the Sublessee, be deemed liable to Sublessee for any <u>lure of the Sublessor to perform and comply with Sublessor's Remaining Obligations</u>

8.3 Sublessor hereby irrevocably authorizes and directs Sublessee upon receipt of any written notice from the Master *ssor stating that a Default exists in the performance of Sublessor's obligations under the Master Lease, to pay to Master Lessor the *nt due and to become due under the Sublease. Sublessee agrees that Sublessee shall have the right to rely upon any such *tement and request from Master Lessor, and that Sublessee shall pay such Rent to Master Lessor without any obligation or right to *quire as to whether such Default exists and notwithstanding any notice from or claim from Sublessor to the contrary and Sublessor all have no right or claim against Sublessee for any such Rent so paid by Sublessee.

8.4 No changes or modifications shall be made to this Sublease without the consent of Master Lessor.

Consent of Master Lessor.

9.1 In the event that the Master Lease requires that Sublessor obtain the consent of Master Lessor to any subletting by *blessor then, this Sublease shall not be effective unless, within 10 days of the date hereof, Master Lessor signs this Sublease *reby giving its consent to this Subletting.

9.2 In the event that the obligations of the Sublessor under the Master Lease have been guaranteed by third parties then *ither this Sublease, nor the Master Lessor's consent, shall be effective unless, within 10 days of the date hereof, said guarantors *n this Sublease thereby giving their consent to this Sublease.

9.3 In the event that Master Lessor does give such consent then:

(a) Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay : Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Lease.

(b) The acceptance of Rent by Master Lessor from Sublessee or any one else liable under the Master Lease all not be deemed a waiver by Master Lessor of any provisions of the Master Lease.

(c) The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.

(d) In the event of any Default of Sublessor under the Master Lease, Master Lessor may proceed directly *inst Sublessor, any guarantors or any one else liable under the Master Lease or this Sublease without first exhausting Master. *ssor's remedies against any other person or entity liable thereon to Master Lessor.

(e) Master Lessor may consent to subsequent sublettings and assignments of the Master Lease or this *blease or any amendments or modifications thereto without notifying Sublessor or any one else liable under the Master Lease and *hout obtaining their consent and such action shall not relieve such persons from liability.

(f) In the event that Sublessor shall Default in its obligations under the Master Lease, then Master Lessor, at *option and without being obligated to do so, may require Sublessee to attorn to Master Lessor in which event Master Lessor shall *dertake the obligations of Sublessor under this Sublease from the time of the exercise of said option to termination of this Sublease Master Lessor shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Lessor be *le for any other Defaults of the Sublessor under the Sublease.

9.4 The signatures of the Master Lessor and any Guarantors of Sublessor at the end of this document shall constitute *ir consent to the terms of this Sublease.

9.5 Master Lessor acknowledges that, to the best of Master Lessor's knowledge, no Default presently exists under the *ster Lease of obligations to be performed by Sublessor and that the Master Lease is in full force and effect.

9.6 In the event that Sublessor Defaults under its obligations to be performed under the Master Lease by Sublessor, *ster Lessor agrees to deliver to Sublessee a copy of any such notice of default. Sublessee shall have the right to cure any Default *ublessor described in any notice of default within ten days after service of such notice of default on Sublessee. If such Default is *ed by Sublessee then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

Additional Brokers Commissions.

10.1 Sublessor agrees that if Sublessee exercises any option or right of first refusal as granted by Sublessor herein, or any *on or right substantially similar thereto, either to extend the term of this Sublease, to renew this Sublease, to purchase the *mises, or to lease or purchase adjacent property which Sublessor may own or in which Sublessor has an interest, then Sublessor *ll pay to Broker a fee in accordance with the schedule of Broker in effect at the time of the execution of this Sublease. *withstanding the foregoing, Sublessor's obligation under this Paragraph is limited to a transaction in which Sublessor is acting as a *blessor, lessor or seller.

10.2 Master Lessor agrees that if Sublessee shall exercise any option or right of first refusal granted to Sublessee by *ter Lessor in connection with this Sublease, or any option or right substantially similar thereto, either to extend or renew the Master *se, to purchase the Premises or any part thereof, or to lease or purchase adjacent property which Master Lessor may own or in *h Master Lessor has an interest, or if Broker is the procuring cause of any other lease or sale entered into between Sublessee and *ter Lessor pertaining to the Premises, any part thereof, or any adjacent property which Master Lessor owns or in which it has an *est, then as to any of said transactions, Master Lessor shall pay to Broker a fee, in cash, in accordance with the schedule of *ter in effect at the time of the execution of this Sublease.

10.3 Any fee due from Sublessor or Master Lessor hereunder shall be due and payable upon the exercise of any option to *nd or renew, upon the execution of any new lease, or, in the event of a purchase, at the close of escrow.

10.4 Any transferee of Sublessor's Interest in this Sublease, or of Master Lessor's interest in the Master Lease, by accepting

PAGE 4 OF 6

ALS INITIALS

1 - AIR COMMERCIAL REAL ESTATE ASSOCIATION FORM SBMT-0-4/01E

n assignment thereof, shall be deemed to have assumed the respective obligations of Sublessor or Master Lessor under this Paragraph 10. Broker shall be deemed to be a third-party beneficiary of this paragraph 10.

1. **Representations and Indemnities of Broker Relationships.** The Parties each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder (other than the Brokers, if any) in connection with this Sublease, and that no one other than said named Brokers is entitled to any commission or finder's fee in connection herewith. Sublessee and Sublessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

2. **Attorney's fees.** If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term, "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred. In addition, Sublessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach ($200 is a reasonable minimum per occurrence for such services and consultation).

3. **No Prior or Other Agreements; Broker Disclaimer.** This Sublease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective. Sublessor and Sublessee each represents and warrants to the Brokers that it has made, and is relying solely upon, its own investigation as to the nature, quality, character and financial responsibility of the other Party to this Sublease and as to the use, nature, quality and character of the Premises. Brokers have no responsibility with respect thereto or with respect to any default or breach hereof by either Party. The liability (including court costs and attorneys' fees), of any Broker with respect to negotiation, execution, delivery or performance by either Sublessor or Sublessee under this Sublease or any amendment or modification hereto shall be limited to an amount up to the fee received by such Broker pursuant to this Sublease; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY REAL ESTATE BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS SUBLEASE OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

- SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS SUBLEASE.

- RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PREMISES FOR SUBLESSEE'S INTENDED USE.

WARNING: IF THE SUBJECT PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THE SUBLEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

Executed at: 250 Manville ST         Executed at: 201 West Manville ST.
On: 10-25-06                          On: 10-26-06

By SUBLESSOR:                         By SUBLESSEE:
K/CFS West, Inc., a California Corporation   Drayage Express Corp., a California Corporation

By: _____                   By: _____
Name Printed: Frank Capobianco        Name Printed: Jim Cullisen
Title: CEO                            Title: President/CEO

By: _____                   By: _____
Name Printed: _____         Name Printed: _____
Title: _____                Title: _____
Address: 250 West Manville            Address: 17707 South Santa Fe Avenue
Compton, CA 90220                     Rancho Dominguez, CA 90221
Telephone: (310) 898-2090             Telephone: (310) 608-2771
Facsimile: (___)                      Facsimile: (310) 608-2772
Federal ID No. _____        Federal ID No. 14-1860336

| BROKER: | BROKER: |
|---|---|
| Lee & Associates- LA South Bay, Inc. | NAI Capital |
| Attn: Don Smith | Attn: Bob Morris, SIOR |
| Title: Senior Vice President/Principal | Title: Executive Vice President |
| Address: 1411 West 190th Street, Suite 450 | Address: 970 West 190th Street, Suite 100 |
| Gardena, CA 90248 | Torrance, CA 90502 |
| Telephone:(310) 768-8800 | Telephone:(310) 532-9080 |
| Facsimile:(310) 768-8978 | Facsimile:(310) 327-6259 |
| Federal ID No. | Federal ID No. |

Consent to the above Sublease is hereby given.

| Executed at | Executed at: |
|---|---|
| On: | On: |

| By MASTER LESSOR: | By GUARANTOR(S): |
|---|---|
| Milpitas Fleming Associates, a California General Partnership, Stanley and Joyce Black and Tymar Partners California General Partnership | By: |
| By: *signature* | Name Printed: |
| Name Printed: Kathy Stimson | Address: |
| Title: Agent to Owner | |
| | By: |
| By: | Name Printed: |
| Name Printed: | Address: |
| Title: | |
| Address: | |
| Telephone:( ) | |
| Facsimile:( ) | |
| Federal ID No. | |

NOTICE: These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form: AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017. Telephone No. (213) 687-8777. Fax No.: (213) 687-8616.

PAGE 6 OF 6

INITIALS

© - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM SBMT-0-4/01E

DRAYAGE EXPRESS CORPORATION
DATED OCTOBER 23, 2006

14. Rent Schedule and Commencement:
Possession – upon completion of Improvements

| Period | Rent |
|---|---|
| November 1, 2006 – November 30, 2006: | None |
| December 1, 2006 – October 31, 2007: | $46,000.00/mo NNN |
| November 1, 2007 – January 14, 2008: | $66,000.00/mo NNN |
| *January 15, 2008 – November 14, 2010: | $66,000.00/mo NNN |

*Plus seventy-five percent (75%) of the rental increase from July 15, 2005 to January 14, 2008 subject to a percentage change in the Consumer Price Index (CPI), all urban consumers with a minimum annual increase of three percent (3%) and a maximum annual increase of six percent (6%).

15. Condition of Premises:
The Premises shall be delivered in "broom clean" condition with all debris removed. All mechanical, plumbing, electrical systems of the Premises, to include the heating, ventilation, and air conditioning system, lighting and all loading doors shall be in good working order.

In addition, Sublessor, at Sublessor's expense shall perform the following repairs to the property:

1. Repair the fence along the westerly boundary (by the bike path) of the property.
2. Paint and rehab the office and shop restrooms.
3. Clean the carpets and patch holes in the walls of the offices.
4. Fix the water leak along the easterly wall of the front reception area and office to its north, and repair the wall.
5. Trim the front trees on Santa Fe Avenue.
6. Remove internal fencing. Repairs holes in the warehouse floor.
7. Fix the bent bollards and yard by the pedestrian door in the northeast portion of the yard.
8. Repair and replace bumpers in all dock high loading positions.
9. Patch and repair the yard as needed.

16. Tenant Improvements:
Sublessee plans to install at its expense a 20' wide ramp to the most northeasterly loading door of the building, and remove the existing ramp. Sublessee, at its expense, also plans to install concrete pads for the landing gear of containers in the front of the existing docks and in at least one location in the yard. Subject to Master Lessor's approval in writing of this improvement as a part of the Sublease.

17. Maintenance:
Sublessee shall be responsible only for routine repairs for the roof, HVAC, and parking area. Master Lessor or Sublessor shall be responsible for the costs of replacing the roof, and or the HVAC if required during the sublease term. Subject to the terms of the Master Lease and further subject to damages due to Sublessee's agent or employees negligence or willful damage.

18. Shared Occupancy:
Sublessee ("Drayage") will be occupying 92,000 SF of the total 132,000 SF of the building, and Sublessor will be occupying the remaining 40,000 SF including dock access and offices. After the first twelve (12) months Sublessee will take one-hundred percent (100%) of the Premises.

The Premises is to be separated with a painted line or an internal chain link fence paid for by Sublessor, Sublessor agrees to operate 6 a.m. – 5 p.m. maximum hours Monday through Friday, in a location with loading per attached (Exhibit "A"). Sublessor shall use four (4) dock high positions on the south side and one (1) dock high position on the north side, as shown on Exhibit "A".

19. Operating Expenses, Taxes, Insurance, CAM and Maintenance:
Commencing November 1, 2007, Sublessee will be responsible for one-hundred percent (100%) of all taxes, insurance, operating expenses, common area maintenance (CAM) and maintenance.

20. Liability Insurance:
Sublessee and Sublessor shall add each other as additional insured for the Liability Insurance acceptable to both Sublessor, Sublessee, and as required in the Master Lease.

SUBLESSEE: Drayage Express Corporation,
a California Corporation
By: [signature]
Date: 10-26-06

SUBLESSOR: AZ/CFS West, Inc.,
a California Corporation
By: [signature]
Date: 10-26-06

# EXHIBIT B

THREE (3) DAY NOTICE TO PAY RENT OR QUIT
§ 1161.1 OF THE CODE OF CIVIL PROCEDURE
UNLAWFUL DETAINER; COMMERCIAL REAL PROPERTY

To: *Jim Cullison*
*Drayage Express Corp.*
AND ALL OTHER LESSEES AND OCCUPANTS
of the premises located at and commonly known as
17707 S. Santa Fe Avenue
Rancho Dominguez, CA 90221

**NOTICE IS HEREBY GIVEN** that pursuant to that certain Standard Sublease Multi-Tenant AIR Commercial Real Estate Association lease dated October 23, 2006 (the "Lease") between yourself (as the "Lessee") and the Lessor (the "Lessor") of the property which is commonly known as and located at 17707 S. Santa Fe Avenue Rancho Dominguez, CA 90221 (the "Premises"), you have defaulted (among other things) in your obligation to pay rent and other amounts due under the Lease for at least the period of at least June 1, 2008, up to and including May 1, 2009, as said obligations became due and payable. The Lessor estimates under California Code of Civil Procedure § 1161.1, that the sum of the rental charges due under the Lease for the period stated below for the Premises is as follows:

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| SEE ATTACHED SCHEDULE | | |
| | TOTAL DUE | $ 309,781.86 |

**NOTICE IS HEREBY FURTHER GIVEN** that you are required, within three (3) days after service of this notice, to either pay the total amount indicated above, or vacate the Premises by returning the keys thereof to the office of the building, and leaving the Premises in a broom-clean condition. You are further notified that if you fail to do either of the foregoing, the Lessor reserves the right to elect to declare a forfeiture of the Lease, any amendments thereto, any indentures, and any other rental or agreement under which you hold possession of the Premises. The Lessor also intends to immediately commence legal proceeding against you in unlawful detainer in order to recover possession of the Premises, and to recover a judgment against you and any other persons which may intentionally be occupying the Premises after the expiration of this notice, for the amount of the rent due, and any other damages resulting from the unlawful detention of the Premises.

Notice of Provisions of C.C.P. § 1161.1 regarding acceptance of payment

The Lessor may choose to accept any partial payments of rent made by the Lessee under sub-sections 1161.1 (b) and (c) of the California Code of Civil Procedure. If the Lessee makes any payment pursuant to this notice which is less than the full amount demanded herein, then the Lessor's acceptance of said payment shall not constitute a waiver of any of the Lessor's rights, specifically including the Lessor's right to proceed with a lawsuit in unlawful detainer and to recover possession of the Premises. If the Lessee makes a partial

payment of rent after service of this notice, the Lessor may accept said partial payment without waiving any of the Lessor's rights, and Lessor may, without further notice or demand, proceed with a lawsuit in unlawful detainer in order to recover possession of the Premises.

If the Lessee makes a partial payment of the amounts described in this notice, or of any amount of rent, after the filing or service of the legal action described in this notice, the Lessor may accept such payment and may amend the legal action by giving the Lessee credit for such amount, without delaying that action from proceeding.

For the purposes of this notice, Lessee shall make all payments payable to the Lessor and deliver such payment to Lessor or to Lessor's designated agent, the Law Offices of Jeffrey F. Sax, whose offices are located at 660 South Figueroa Street, Suite 2400, Los Angeles, California, 90017. Personal delivery of the payment may be made to said law offices at said address between the hours of 9:00 AM and 5:30 PM, Monday through Friday (excluding holidays). If necessary, the office may be contacted by telephone at (213) 623-5700.

Dated: May 7, 2009

Master
Lessor: AZ/CFS WEST, INC.

By: Law Offices of Jeffrey F. Sax

By: _____

### IMPORTANT NOTICE

THIS NOTICE DOES NOT INCLUDE A DEMAND FOR UNPAID LATE CHARGES PARKING FEES, UTILITY CHARGES, RENT CREDITS, OPERATING EXPENSES AND REAL PROPERTY TAXES AND ADJUSTMENTS, OR ANY OTHER AMOUNTS PAYABLE BY LESSEE PURSUANT TO THE LEASE, WHICH ARE NOT EXPRESSLY DELININTED AND INCLUDED IN THIS NOTICE OR FOR ANY PERIOD NOT EXPRESSLY DELINEATED IN THE NOTICE. THIS NOTICE IS NOT INTENDED TO BE AN EXHAUSTIVE OR COMPLETE ACCOUNTING OF ALL AMOUNTS DUE BY THE LESSEE UNDER THE LEASE.

THE LESSOR EXPRESSLY RESERVES THE RIGHT TO SEEK PAYMENT OF ANY AND ALL CHARGES AND AMOUNTS DUE UNDER THE TERMS OF THE LEASE, IN ANY LEGAL ACTION AGAINST ALL PERSON(S) AND ENTITIES NAMED ABOVE OR A SIGNATORY OR GUARANTOR TO THE LEASE, REGARDLESS OF WHETHER SUCH AMOUNTS ARE ACTUALLY INCLUDED IN THIS NOTICE, OR OTHERWISE OMITTED FROM THIS NOTICE.

ACCEPTANCE OF ANY AMOUNT DEMANDED HEREBY SHALL IN NO CONDITION OR EVENT CONSTITUTE A WAIVER OF THE RIGHTS OF THE LESSOR WITH RESPECT TO ANY OTHER AMOUNTS DUE BY THE LESSEE UNDER THE LEASE.