SCOTT C. CLARKSON (STATE BAR NO. 143271),
EVE A. MARSELLA (STATE BAR NO. 165797)
CLARKSON, GORE & MARSELLA
A PROFESSIONAL LAW CORPORATION
3424 CARSON STREET, SUITE 350
Telephone: (310) 542-0111
Facsimile: (310) 214-7254

Attorneys for Drayage Express, Corp.,
Former Chapter 11 Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Chapter 7 |
| **DRAYAGE EXPRESS, CORP.**, a California corporation, | Case No. 2:09-bk-32783-VZ |
| Debtor. | **CLARKSON, GORE & MARSELLA, APLC'S FIRST AND FINAL APPLICATION FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF AUGUST 25, 2009 THROUGH NOVEMBER 23, 2010; AND DECLARATIONS OF SCOTT C. CLARKSON AND JIMMIE CULLISON IN SUPPORT THEREOF** |
| | (NO HEARING SET) |

TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER INTERESTED PARTIES:

　　Clarkson, Gore & Marsella, a Professional Law Corporation ("CG&M") bankruptcy counsel for the former Chapter 11 Debtor and Debtor in Possession Drayage Express, Corp., (the "Debtor") hereby submits its "First and Final Application For Compensation For Services Rendered and Reimbursement Of Expenses for the Period of August 25, 2009 through November 23, 2010" (the

379752v1

"Application"). Pursuant to sections 330 and 331 of title 11 of the United States Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure, CG&M seeks an order from this court allowing it a final award of $104,415.50 in compensation for services rendered and reimbursing it $10,354.32 for costs incurred for a total of $114,769.82 for the period of August 25, 2009 through November 23, 2010 (the "Application Period"). The unpaid amount of these fees and costs is $64,769.82, which should be approved and paid as a subordinated chapter 11 administrative claim. During the Application Period, CG&M devoted 260.80 hours to the representation of the Debtor. In support of the Application, CG&M respectfully submits the Declarations of Scott C. Clarkson and Jimmie Cullison (the President of the Debtor) herewith and represents as follows:

## I.

## BACKGROUND

On August 25, 2009 (the "Petition Date"), a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") was filed by the Debtor. The Debtor continued to manage its assets as debtor-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108, until the entry of the Order converting the Debtor's Chapter 11 Case to a case under Chapter 7, on December 8, 2010.

## II.

## CLARKSON, GORE & MARSELLA'S EMPLOYMENT

A pre-petition retainer in the amount of $50,000.00 was paid to CG&M for services rendered and costs incurred in connection with this case. This amount was drawn down pre-petition and pursuant to post-petition professional fee statements authorized by the CGM Employment Application and the U.S. Trustee Guidelines. On August 31, 2009, CG&M submitted an application to the Court to be employed as bankruptcy counsel for the Debtor (the "Employment Application"). On September 22, 2009, the Court entered an order approving the Employment Application. The terms and conditions of CG&M's employment are set forth in said order and Employment Application.

During the Application Period, the hourly rates of the attorneys that provided services to the Committee ranged from $375/hour (Christine Fitzgerald) to $425/hour (Scott C. Clarkson). The rate of the principal paralegal assigned to these cases was $100/hour.

Members of CG&M have extensive experience in the area of insolvency and corporate reorganization and limit their practice primarily to that area. Attached hereto as Exhibit "A" is a summary of the background and qualifications of the members of CG&M who rendered services to the Debtor during the Application Period.

The CG&M attorneys principally responsible for providing services to the Committee are Scott C. Clarkson and Christine Fitzgerald. CG&M has made a concerted effort to provide effective representation as efficiently as possible, including allocating work to attorneys with lower hourly rates when feasible, and not duplicating work assignments. In general, tasks have been allocated among CG&M attorneys and paralegals based upon the comparative experience and expertise of a particular attorney or paralegal and considering the time demands of the cases in light of the attorneys' and paralegal's experience and hourly billing rates.

### III.

### SIGNIFICANT EVENTS AND ACCOMPLISHMENTS IN THIS CASE DURING THE APPLICATION PERIOD

A.  **General Overview.**

Below is a summary of activities that CGM undertook during the Application Period:

**1. Case Administration.** CGM, on behalf of the Debtor, prepared and reviewed the Debtor's petition, schedules, and Statement of Financial Affairs. It prepared and submitted the Debtor's principal compensation requests, and met with the Debtor to obtain an understanding of the Debtor's business affairs and bankruptcy activities during the Application Period. CGM instructed the Debtor on the preparation of and thereafter reviewed the Debtor's OUST report activities (including the 7-day package and Real Estate Questionnaire matters), attended the 341(a) hearing, and provided advice to the Debtor related to the Debtor's banking and financial matters. CGM reviewed and advised the Debtor regarding the Debtor's Monthly Operating Reports and financial situation. CGM also advised the Debtor regarding its insurance requirements.

**2. First Day and Early Case Orders and Cash Collateral Stipulation.** CGM prepared the Debtor's several "first-day" motions that were requested to be entered on an emergency basis, including an interim order approving a cash collateral stipulation which was negotiated with Wells Fargo Bank, NA., a Motion to Pay Pre-Petition Wages and other Benefits, and a Utilities Motion which was pre-negotiated by CGM. These motions were heard on September 1, 2009 and granted shortly thereafter.

**3. Litigation and Negotiations with the Debtor's Primary Unsecured Creditor.**

The primary creditor in this case, landlord AZ/CFS West, Inc. ("AZ West"), has been the only actively participating creditor in this case; however, that participation has been continuous and entirely adversarial. During the case, AZ West filed **four** unsuccessful motions to force the return of the Debtor's premises, each of which required vigorous defense by the Debtor.

On October 1, 2009, AZ West filed a Motion for an Order Authorizing Repossession of Premises Without a Hearing, apparently not understanding that this procedure was limited to chapter 7 cases. This motion was defended successfully by CGM.

On October 6, 2009, AZ West filed a Motion for Relief from the Automatic Stay, which was heard and denied on November 4, 2009.

On January 7, 2010, AZ West again filed a Motion for Relief from the Automatic Stay. Upon opposition to the Motion by the Debtor, AZ West withdrew its Motion for Relief on January 26, 2010; but on the same day filed another Motion for Relief from the Automatic Stay. On March 3, 2010, this final motion was denied; however, adequate protection payments were ordered for payment of rent, which were approximately equal to the rent previously being paid post-petition.

On September 10, 2009, the Debtor filed its Motion to Reject the AZ West real property lease. AZ West *opposed* the Motion to Reject the Lease, claiming that the lease was rejected pre-petition, and no longer could be rejected or assumed. In light of AZ West's stated position, the Debtor withdrew its motion to reject the lease.

On September 30, 2009, the Debtor filed its Motion to enter into a post-petition real property lease to replace the AZ West premises. On October 2, 2009, AZ West *opposed* that Motion. On October 14, 2009, the Court approved the Motion of the Debtor to enter into the new lease.

Continuing its adversarial mode, at the same time as the hearing on the Debtor's Motion to enter into a new lease, AZ West filed a state court action against the new master landlord, which resulted in the new master landlord withholding its approval of the Debtor's lease.

On October 30, 2009, the Debtor initiated an adversary proceeding (Adv. Pro. 2:09-ap-02549) against AZ West and its counsel for violation of the Automatic Stay by its interference with the Debtor's new lease.

On October 20, 2009, the Court mandated mediation between the parties on all issues, which was undertaken by a volunteer mediator from the Central District of California. From this mediation, a settlement term sheet was created (the "Settlement"). The Debtor submitted its Motion to Approve the Settlement on March 9, 2010; however, AZ West opposed the Motion, asserting that the settlement was not obtained. The Court denied the Motion to Approve the Settlement.

**4. Post-Petition Entry into Real Estate Leases.**

CGM prepared two motions to enter into post petition real property leases during the pendency of this case. As earlier set forth, on September 30, 2009, the Debtor filed its Motion to enter into a post-petition real property lease to replace the AZ West premises. This motion was granted over the objections of AZ West; however, because of the state litigation filed by AZ West against the future landlord and its master lessor, the new landlord withdrew its approval of the lease.

On July 29, 2010, the Debtor again filed another motion to enter into a post-petition real property lease, which was granted by the Court on August 12, 2010. On September 1, 2010 the Debtor started moving into its new premises and was completely moved in on September 15, 2010.

**5. Development of and Negotiations for the Debtor's Disclosure Statement and Plan of Reorganization.**

CGM drafted the Debtor's Proposed Disclosure Statement and Plan of Reorganization, which was filed with the Court on May 27, 2010. Following the filing of the Debtor's Amended Disclosure Statement and Plan of Reorganization, the First Amended Disclosure Statement was approved by the Court on July 13, 2010. Balloting was returned, with a solitary "no" vote from AZ West.

Negotiations and a second mediation with AZ West regarding the Plan, and its administrative and general unsecured claims were undertaken by the Debtor. Following approval of the First

1  Amended Disclosure Statement, AZ West submitted an administrative claim of approximately
2  $135,000, which the Debtor believed was over twice the amount owed to AZ West as an
3  administrative claim.  The Debtor, unable to finance continued litigation against AZ West, and
4  unable to secure amounts to pay the full alleged AZ West administrative claim on the Effective Date,
5  offered to pay $60,000.00 immediately on the Effective Date and $5,000.00 monthly thereafter.  AZ
6  West rejected this offer and made no alternative proposals.  Subsequently, the case was converted to
7  Chapter 7 by the Debtor.

**6. Claim Bar Date; Claims Review; Objections.**

CGM established a claims bar date and claims objection date, and thereafter reviewed all of the claims with the Debtor.  Significant efforts were made by the Debtor with respect to objections to and negotiations regarding the Administrative Claims tendered by AZ West.

IV.

**PREVIOUS INTERIM FEE APPLICATIONS**

This is CGM's first and only fee application.

V.

**SUMMARY OF HOURLY RATES BILLED BY PROFESSIONALS**

The following lawyers and paraprofessionals of CGM spent the amounts of time at the respective hourly rates as indicated below during the Application Period:

| PROFESSIONAL | TIME | RATE 2009-2010 | Fees |
|---|---|---|---|
| Scott C. Clarkson | 94.70 | $450.00 | $41,205.00 |
| Christine Fitzgerald | 72.70 | $375.00 | $27,262.50 |
| Eve A. Marsella | 22.20 | $425.00 | $9,000.00 |
| Chandra G. Spencer | 7.60 | $425.00 | $3,185.00 |
| Nina Narig (paralegal) | .3 | $100.00 | $25.50 |

The total time in the case was 260.80 hours, for an amount of $104,415.50.  Attached hereto as Exhibit "B" are detailed time entries of each attorney, by billing category, and a table of attorney time by OUST category, for all time spent by CG&M during the Application Period

379752v1

5

CGM submits that, based upon the quality of the services provided and the results achieved, the fees requested are reasonable and justified as demonstrated in more detail in Section III entitled "Significant Events And Accomplishments In These Cases During The Application Period."

## VI.

## SUMMARY OF PAYMENTS RECEIVED DURING THE FIRST INTERIM PERIOD.

CGM received no payments for fees or costs during the First Interim Period.

## VII.

## SUMMARY OF SERVICES RENDERED AND FEES INCURRED

In accordance with the U.S. Trustee Guidelines, CGM has classified its time entries in these cases into the following categories, the detail by attorney, together with all time detail, is set forth in Exhibit "B" attached hereto. A simply summary of costs and fees by category is as follows:

| OUST Category | Fees/Costs Incurred |
|---|---|
| Costs | $10,354.32 |
| Case Administration | $15,478.00 |
| Fee/Employment Application | $3125.00 |
| Financing | $16,080.00 |
| Claims Administration and Objections | $17,302.50 |
| Business Operations | $4,027.50 |
| Assumption/Rejection of Leases | $9,452.50 |
| Plan/Disclosure Statement | $17,387.50 |
| Litigation | $15,177.50 |
| Motion for Relief from Stay Defense | $5,447.50 |
| Meeting with Creditors | $937.50 |

Attached hereto as Exhibit "C" is a summary of the reimbursable expenses incurred by CGM and recorded during the Application Period. All of these exhibits are incorporated in this Application by this reference.

## VIII.

## SUMMARY OF COSTS AND EXPENSES

The U.S. Trustee Guidelines require that an application which seeks reimbursement of expenses include a summary listing of all expenses incurred. The total of costs and expenses incurred during the Application Period for which CGM seeks reimbursement is $10,354.32. Attached hereto as Exhibit "C" is a summary of the reimbursable expenses incurred by CGM and recorded during the Application Period. These expenses are listed in detail in Exhibit "D".

## IX.

## THE COMPENSATION AND EXPENSES REQUESTED ARE REASONABLE

Bankruptcy Code section 330 provides for the award of fees and costs to professionals employed in a bankruptcy case for:

> (1) reasonable compensation for actual, necessary services rendered by such . . . professional person . . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
>
> (2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

In determining the award of compensation, courts generally consider "the nature, the extent, and the value of the professional's services". In re Auto Parts Club, Inc., 211 B.R. 29, 33 (9th Cir. BAP 1997). However, "[T]he primary method used to determine a reasonable attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate." In re Yermakov, 718 F.2d 1465, 1471 (9th Cir. 1983); In re Powerine Oil Co., 71 B.R. 767, 772 (9th Cir. BAP 1986) (holding that the fees calculated by multiplying the number of hours to the hourly rate creates a presumption of reasonableness); In re Montgomery Drilling Co., 121 B.R. 32, 39 (Bankr. E.D. Cal. 1990). It has taken 260.80 hours of time of CG&M's lawyers in a period that has covered from August 25, 2009 through November 23, 2010. The total fee amounts for this case as a Debtor in Possession was $104,415.50, which was entirely reasonable for the matters required to be performed and results obtained.

///

## X.

## CONCLUSION

Based on all the foregoing, CGM respectfully requests that this Court enter its order: (a) approving, allowing and authorizing for payment CGM's fees for the Application Period in an amount of $104,415.50 and expenses incurred in the amount of $10,354.32 for a total amount of $114,769.82 for the period of August 25, 2009 through November 23, 2010, and (b) approve a subordinated Chapter 11 Administrative Claim of $64,769.82 in favor of CGM.

December 28, 2010

CLARKSON, GORE & MARSELLA, APLC

By: /s/ Scott C. Clarkson
Scott C. Clarkson
Christine Fitzgerald
Counsel for Drayage Express, Corp.
Debtor

379752v1

8

## DECLARATION OF SCOTT C. CLARKSON

I, Scott C. Clarkson, declare:

1. I am over 18 years of age and have personal knowledge of the matters set forth herein. If called upon, I would testify competently with respect to these matters. I submit this Declaration in support of "Clarkson, Gore & Marsella's First and Final Application For Compensation For Services Rendered And Reimbursement Of Expenses from August 25, 2009 through November 23, 2010 (the "Application").

2. I am a member of Clarkson, Gore & Marsella, APLC, ("CG&M"), bankruptcy counsel to Drayage Express, Corp., Chapter 11 Debtor and Debtor in Possession (the "Debtor").

3. Attached hereto are true and correct copies of the following documents:

   a. Exhibit "A" - summary of the experience and qualifications of those members of CG&M who rendered services to the Debtor during the Application Period (as defined in the Application);

   b. Exhibit "B" – detailed time entries of each attorney, by billing category, and a table of attorney time by OUST category, for all time spent by CG&M during the Application Period;

   c. Exhibit "C" – summary of reimbursable expenses.

   b. Exhibit "D" – detail of reimbursable expenses.

4. The Application has been prepared in compliance with the Guidelines promulgated by the Office of the United States Trustee ("UST"), except as specifically noted in the text of the Application. Other than as disclosed in the Application, no payments have heretofore been made or promised to CG&M for services rendered or to be rendered in any capacity in connection with this case, other than the compensation received pursuant to the OUST Guidelines for Professional Fees.

5. Neither CG&M nor any member of CG&M has any agreement or understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded to CG&M in these cases with any other person or attorney, except as among members of CG&M.

379752v1

9

       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

       Executed this 28th day of December, 2010, at Torrance, California.

*[signature]*

SCOTT C. CLARKSON

## DECLARATION OF JIMMIE CULLISON

I, Jimmie Cullison, declare as follows:

1. I am the President of Drayage Express, Corp., former Chapter 11 Debtor and Debtor in Possession (the "Debtor," or "Drayage"). I have reviewed Clarkson, Gore & Marsella's First and Final Application For Compensation For Services Rendered And Reimbursement Of Expenses from August 25, 2009 through November 23, 2010 (the "Application"), and have personal knowledge of the matters set forth herein because of that review or because of direct personal knowledge. If called upon as a witness, I would and could testify competently thereto.

2. I have reviewed the First and Final Fee Application of Clarkson, Gore & Marsella, APLC, and approve the fees and costs sought therein.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that this Declaration was executed on December 29, 2010 at Los Angeles County, California.

Jimmie Cullison

379752v1

11

EXHIBIT "A"

# EXHIBIT "A"

## BIOGRAPHIES OF MEMBERS AND OTHER ATTORNEYS ASSOCIATED WITH CLARKSON, GORE & MARSELLA, A PROFESSIONAL LAW CORPORATION

**SCOTT C. CLARKSON** - Born Houston, Texas, September 6, 1954. Admitted to California bar, 1989, District of Columbia bar 1986, Commonwealth of Virginia bar 1982. Current Chairman, Los Angeles County Bar Association Commercial Law & Bankruptcy Section; Former Chairman, Los Angeles County Bar Association Bankruptcy Committee; Martindale Hubbell AV Rated.

**Author:** "Representing Creditors in Individual and Small Business Chapter 11 Cases", Personal and Small Business Bankruptcy Practice in California, California Continuing Education of the Bar (CEB), 2002 to 2008 editions.

**Author:** "More About the Bankruptcy Act of 1978", American Bar Association Journal, May 1979; "A Legislative History of the Bankruptcy Court System", Annual Survey of Bankruptcy Law, Emory University, 1979.

**Coauthor:** "Private Relief Legislation in the United States Congress", West Federal Practice Manual, 1980; "The New RCRA: Legislative Mandates, Regulatory Resources", Vol. 1, No. 6, Hazardous Substances Journal, April 1986.

**Editor:** "The Legislative History of Hazardous and Solid Waste Amendments of 1984", Institute for Law and Public Health Protection, November 1985; "The Legislative History of the Superfund Amendments of 1986", Institute of Law and Public Health Protection, April 1987.

**Education:** Indiana University (B.A. 1979); George Mason University School of Law (J.D., 1982); Articles Editor, Law Review, 1982; Law Clerk to U.S. District Judge William L. Hungate, Eastern District of Missouri.

**Professional Affiliations:** Past Chair, Los Angeles County Bar Association Commercial Law and Bankruptcy Section; Past Chair of the LACBA Bankruptcy Committee. Former Local Bankruptcy Rules Committee Chair, Legislative Committee Chair. Los Angeles Bankruptcy Forum (Member of Board of Directors, 2002-2003); South Bay Bar Association, Financial Lawyers Conference; American Bar Association (Member, Business Bankruptcy Section Subcommittee on Legislation), Member of Advisory Board to Norton's Annual Survey of Bankruptcy Law, 1979-81. Legislative Director for U.S. Congressman Harold L. Volkmer, United States House of Representatives, assigned to House Judiciary Committee's redrafting of the Federal Bankruptcy Code, 1977-79. Bankruptcy Trustee, the District of Columbia and Eastern Virginia, 1979-82.

**EVE A. MARSELLA** - Born September 24, 1966. Admitted to California bar, 1993, U.S. District Court, Central and Southern Districts of California.

**Education:** University of California at Los Angeles (B.A. English, 1989); Loyola Law School (J.D. 1992).

**Professional Affiliations:** Los Angeles County Bar Association, South Bay Bar Association, American Bar Association, Phi Delta Phi Law Fraternity, South Bay American Inn of Court, Financial Lawyers Conference, South Bay Women Lawyers Association (President, 2001).

**CHRISTINE FITZGERALD.** Born October 11, 1982. Admitted to the California Bar, 2008.

**Education:** The Pennsylvania State University (B.S. Chemical Engineering 2005); Loyola Law School (J.D. 2008).

**Professional Affiliations:** Los Angeles County Bar Association; Financial Lawyers Conference; Los Angeles Bankruptcy Forum, Phi Alpha Delta Law Fraternity; Delta Zeta Sorority (National Academics Committee).

**CHANDRA GEHRI SPENCER**

Memberships: Admitted to practice in all California courts, the United States District Courts for the Central and Southern Districts of California and the Ninth Circuit Court of Appeals.

Education: Juris Doctorate, cum laude, in 1996 from Pepperdine University School of Law and her Bachelor of Arts in Political Science and Economics from California Lutheran University in 1994.

Professional Affiliations: State Bar of California, Los Angeles County Bar Association, San Fernando Valley Bar Association, Statewide California Association of Code Enforcement Officers.

**Laura Buchanan**

Memberships: Admitted to the CA Bar in 1991; Admitted to U.S. District Court, Central District of California.

Education: Juris Doctorate from Boalt Hall School of Law, University of California, Berkeley in 1991; B.S., Electrical Engineering from Stanford University in 1987.